# United States Court of Appeals for the Federal Circuit

---

**CONLEY F. MONK, JR.,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS**
*Respondent-Appellee*

---

2015-7092, 2015-7106

---

Appeals from the United States Court of Appeals for Veterans Claims in No. 15-1280, Judge Lawrence B. Hagel.

---

Decided: April 26, 2017

---

JOHN GIAMMATTEO, LIANG SHU, Jerome N. Frank Legal Services Organization, New Haven, CT, argued for claimant-appellant. Also represented by MICHAEL JOEL WISHNIE, MARIO GAZZOLA, JASON PARKIN, JESSICA PURCELL.

AGATHA KOPROWSKI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY; BRIAN D. GRIFFIN,

AMANDA BLACKMON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

JONATHAN FREIMAN, Wiggin and Dana LLP, New Haven, CT, for amici curiae William Gunn, Mary Lou Keener. Also represented by LORA JOHNS.

BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC, for amici curiae The National Veterans Legal Services Program, Veterans Law Institute, The American Legion, The Military Order of the Purple Heart, Iraq and Afghanistan Veterans of America, Vietnam Veterans of America, Hispanic American Veterans of Connecticut.

JASON L. LICHTMAN, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, for amici curiae Administrative Law Professors, Complex Litigation Law Professors. Also represented by JONATHAN D. SELBIN.

_____

Before NEWMAN, DYK, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

This appeal concerns whether the United States Court of Appeals for Veterans Claims has authority to certify a class for class action or for similar aggregate resolution procedures. Conley F. Monk, Jr., petitioned the Veterans Court to certify a class action and to otherwise aggregate for adjudication the claims of thousands of veterans whose claims were similarly situated to his own. The Veterans Court denied the request on grounds that it lacks authority to certify classes of claims, or to adjudicate disability claims on an aggregate basis. We hold that the Veterans Court has the authority to certify a class for a class action and to maintain similar aggregate resolution procedures. We reverse the judgment of the Veterans

Court and remand for further proceedings consistent with this opinion.

BACKGROUND

Mr. Monk served in the Marine Corps during the Vietnam War. In February 2012, Mr. Monk filed a claim for disability benefits with the Department of Veterans Affairs ("VA") Regional Office in Hartford, Connecticut. His claim stems from what he alleges are service-connected post-traumatic stress disorder, diabetes, hypertension, and strokes. In early 2013, the VA notified Mr. Monk that his claim had been denied because his Marine Corps discharge was "other than honorable." J.A. 138.

Mr. Monk challenged the VA decision by filing with the VA a Notice of Disagreement ("NOD") and requesting a hearing before a decision review officer.[1] Separately, Mr. Monk applied to the Board of Correction of Naval Records ("BCNR") to upgrade his discharge status.

In February 2014, the regional office held the requested hearing. In March 2015, the VA informed Mr. Monk that it could not process his appeal until it received records from the BCNR regarding his discharge status.

On April 6, 2015, Mr. Monk filed a petition for a writ of mandamus with the United States Court of Appeals for Veterans Claims ("Veterans Court"). He requested the Veterans Court to order the Secretary of Veterans Affairs

---

[1] The appeal process at the VA begins with the veteran filing a notice of disagreement. J.A. 71. The regional office must then issue a Statement of the Case. *Id.* The veteran may seek a hearing with a decision review officer, after which the veteran may seek review by the Board of Veterans' Appeals ("Board"). *Id.*

("Secretary") to promptly adjudicate both his disability benefits application and the applications of similarly situated veterans. Mr. Monk also requested that the Veterans Court certify a class under a class action or similar aggregate resolution procedure. He proposed that a class be formed of all veterans who had applied for VA benefits, had timely filed an NOD, had not received a decision within twelve months, and had demonstrated medical or financial hardship as defined by 38 U.S.C. §§ 7107(a)(2)(B)–(C). Mr. Monk proposed that members of the class include veterans in all stages of the VA appeals process that otherwise met these requirements, from those awaiting a Statement of the Case to those awaiting Board adjudication. J.A. 18, ¶ 43.

Mr. Monk further alleged that members of the proposed class shared questions of law and fact, including whether the VA's delay in rendering decisions on disability benefits claims violated the veterans' due process rights. On April 9, 2015, another veteran, Harold William Van Allen, filed a motion to join Mr. Monk's petition as a class member.

On May 8, 2015, the Veterans Court issued a non-dispositive order both denying Mr. Monk's request for class certification and ordering the Secretary to respond to the part of Mr. Monk's petition regarding his appeal of the VA's denial of his personal claim for disability benefits.

On May 27, 2015, in order to permit Mr. Monk to immediately appeal the class certification denial, the Veterans Court replaced the non-dispositive order with a dispositive order denying class certification and a non-dispositive order requiring the Secretary to respond to Mr. Monk's individual mandamus petition. In the same order, the Veterans Court denied Mr. Van Allen's motion to join Mr. Monk's proposed class.

In May 2015, the BCNR granted Mr. Monk's application for an upgraded discharge status which resulted in an honorable discharge status for Mr. Monk. In July 2015, the Veterans Court issued an order denying Mr. Monk's individual petition for mandamus relief. It found that the VA's delay in adjudicating Mr. Monk's disability claim resulted, at least in part, from the VA's need for certain BCNR records.

The Veterans Court also rejected Mr. Monk's request for a class action or other aggregate relief on grounds that it lacks authority to maintain class actions. The Veterans Court stated that "Mr. Monk fails to appreciate the [Veterans] Court's long-standing declaration that it does not have the authority to entertain class actions." J.A. 3. The Veterans Court concluded that "[i]n the absence of such authority, no other arguments matter." J.A. 4.

On May 27, 2015, and July 10, 2015, Mr. Monk filed two timely appeals before this court, one challenging the Veterans Court's decision to deny his individual disability claim and the other to appeal the Veterans Court decision denying his request for a class action. Though separate appeals, the class certification appeal (No. 15-7092) was consolidated with the individual petition appeal (No. 15-7106).

After Mr. Monk appealed to this court, the Secretary determined that Mr. Monk was eligible for full disability benefits for his service-connected post-traumatic stress disorder and diabetes. On or after November 19, 2015, Mr. Monk filed before the VA administration a new NOD arguing that the Secretary erred in determining the effective date for his individual disability benefits. The action concerning this NOD remained pending as of the date of oral argument in this case.

## JURISDICTION

We first review as a preliminary issue the Secretary's assertion that we lack jurisdiction over this appeal. Our jurisdiction over appeals of decisions of the Veterans Court is limited. We may only review Veterans Court decisions with respect to the validity of a decision of the Veterans Court on a rule of law or of any statute or regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Veterans Court in making the decision. 38 U.S.C. § 7292(c). This appeal raises a question of legal interpretation that is clearly within our jurisdiction. *Cox v. West*, 149 F.3d 1360, 1362 (Fed. Cir. 1998). We review the Veterans Court's interpretations of statutes *de novo*. *Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007).

The Secretary asserts that this court lacks jurisdiction because Mr. Monk's appeal has been rendered moot. As noted above, after Mr. Monk filed his appeals, the VA awarded Mr. Monk a one hundred percent (100%) disability rating, the highest rating possible. The Secretary argues that because the disability benefits award resolved Mr. Monk's claim, there exists no justiciable controversy.

Article III of the Constitution limits our jurisdiction to cases and controversies. U.S. CONST. art. III, § 2. The case-or-controversy requirement ensures that federal court adjudication is limited to actual and concrete disputes, the resolutions of which have a direct consequence on the parties. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980); *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1290–91 (Fed. Cir. 2008).

A case is said to lack an actual or concrete dispute where the relief sought by a plaintiff is satisfied or otherwise rendered moot. *See DeFunis v. Odegaard*, 416 U.S.

312, 317 (1974) ("The controversy between the parties has thus clearly ceased to be 'definite and concrete' and no longer 'touch(es) the legal relations of parties having adverse legal interests.'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).  A case is moot when it no longer presents live issues or "the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

The Secretary argues that once Mr. Monk obtained full relief, he no longer possessed a legally cognizable interest in the outcome of the appeal.  We agree that Mr. Monk's appeal concerning his individual disability claim is rendered moot.[2]  We disagree, however, that Mr. Monk's appeal of the Veterans Court decision on class certification is also moot.

The issue of mootness in the context of class actions has a long history. In particular, significant litigation has focused on whether a class action suit can be maintained by a class representative whose own substantive claim has been satisfied.  *See, e.g., Geraghty*, 445 U.S. at 404; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972).

The Supreme Court addressed this precise issue in *Geraghty*, holding that a class action "does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." *Geraghty*, 445 U.S. at 404.  This decision is applicable to this case because, as in *Geraghty*, Mr. Monk's individual

---

[2]    This is not to say that Mr. Monk's NOD claim before the VA administration concerning the effective date of the disability is moot.

substantive claim was satisfied *after* the Veterans Court denied the request for class certification to form a class.

In *Geraghty*, the Court reasoned "the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified." *Id.* at 403. The Court explained that the purpose of the personal stake requirement in the class action context is to assure that the case is in a form capable of judicial resolution. *Id.* Here, the question on appeal is the Veterans Court decision that it did "not have the authority to entertain class actions" and that in "the absence of such authority, no other arguments matter." J.A. 3–4. This question exists independent of Mr. Monk's disability award and it persists in the context of the appeal raised by Mr. Monk. It is a question presented "in a form fairly capable of judicial resolution." *Geraghty*, 445 U.S. at 403.

The Secretary argues that *Geraghty* is inapposite because there, the personal stake in obtaining class certification was derived from Federal Rule of Civil Procedure 23, which does not apply in the Veterans Court. In support, the Secretary cites *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013). In *Genesis*, the Supreme Court found that a plaintiff's class certification request under the Fair Labor Standards Act, where Rule 23 did not apply, was rendered moot once the plaintiff's individual claim was mooted. *Id.* The Court reasoned that "essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23." *Id.* at 1530. The Secretary reasons that since Rule 23 does not apply in Veterans Court, once Mr. Monk's individual claim was mooted, the potential for any independent legal status for the purported putative class was eliminated.

*Genesis* is distinguishable on an important factor. The primary reason the Court declined to extend *Geraghty* was because the *Genesis* plaintiff's claim was

mooted *before* any decision on class certification was rendered: "Here, respondent had not yet moved for 'conditional certification' when her claim became moot, nor had the District Court anticipatorily ruled on any such request. Her claim instead became moot prior to these events, foreclosing any recourse to *Geraghty*." *Id.* at 1530. Here, as in *Geraghty*, Mr. Monk's claim became moot *after* class certification was sought and denied. This is also a situation in which Mr. Van Allen moved to join Mr. Monk's proposed class (and was denied by the Veterans Court), unlike in *Genesis* where no other individuals had joined the class. 133 S. Ct. at 1527.

In any event, even if *Geraghty* were viewed as limited only to situations where Rule 23 is applicable, *Genesis* itself recognized that in cases such as this, where the relief sought is forward-looking, a claim is not moot if it is capable of repetition and yet evades review. A "class-action claim is not necessarily moot upon the termination of the named plaintiff's claim" in circumstances in which "other persons similarly situated will continue to be subject to the challenged conduct," but "the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Id.* at 1530–31 (internal quotations omitted). Data presented to the court indicate that veterans face, on average, about four years of delay between filing an NOD and receiving a final Board decision. According to the Board's Annual Report Fiscal Year 2014, veterans who filed an NOD waited an average of 330 days before receiving a Statement of the Case. Veterans then waited an average of 681 days for the VA to certify appeals to the Board, and then an average of 357 days for the Board to decide their appeals. Thousands of veterans seeking benefits are still awaiting results of their appeals. Indeed, Mr. Monk himself has filed another NOD challenging the effective date of his disability benefits, and will likely be subject to the same average

delay. On these facts, it would appear that the case is not moot because it is "capable of repetition, yet evad[es] review." *Geraghty*, 445 U.S. at 398 ("[W]here the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff; the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake.") (citations omitted).

## VETERANS COURT'S AUTHORITY

The Secretary concedes that the Veterans Court has authority to certify a class for class action or similar aggregate resolution procedure. Oral Arg. at 14:40–20:19; 22:58–23:07, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-7092.mp3. Indeed, the Secretary did not argue that the Veterans Court lacks authority to aggregate claims, but rather, that the Veterans Court merely decided that aggregation was not appropriate in this instance. *See, e.g.*, Resp. Br. 19–22; 33–35. But the Veterans Court in unquestionable terms held that it lacked authority to entertain class actions and that in "the absence of such authority, *no other arguments matter*." J.A. 3 (emphasis added). As reviewed below, we conclude that the Veteran's Court decision that it lacks authority to certify and adjudicate class action cases was an abuse of discretion. We hold that the Veterans Court has such authority under the All Writs Act, other statutory authority, and the Veterans Court's inherent powers.

### 1. The All Writs Act

The All Writs Act, 28 U.S.C. § 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Under the All Writs Act, the authority of the Veterans Court "is not confined to the issuance of writs in aid of a

jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943). The All Writs Act is a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.'" *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). It permits federal courts to fill gaps in their judicial power where those gaps would thwart the otherwise proper exercise of their jurisdiction. *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985).

The All Writs Act unquestionably applies in the Veterans Court. *Cox*, 149 F.3d at 1363. In *Cox*, we held that the Veterans Court has the power to issue writs in aid of its jurisdiction under the All Writs Act, such as ordering the Board to issue a final determination in a case where it had not already done so. *Id.* We see no limitation in the All Writs Act precluding it from forming the authoritative basis to entertain a class action.

Indeed, the All Writs Act has provided authority to aggregate cases in various contexts. For example, in *United States ex rel. Sero v. Preiser*, the Second Circuit found that a district court properly maintained a class action under the All Writs Act. 506 F.2d 1115, 1125–26 (2d Cir. 1974). The district court aggregated claims under the All Writs Act, as opposed to Federal Rule of Civil Procedure 23, because the case involved habeas proceedings where Rule 23 did not apply. *Id.* The Second Circuit explained that the All Writs Act permits courts to create "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." *Id.* at 1125 (quoting *Harris*, 394 U.S. at 299).

The Second Circuit found that creating a class action procedure was appropriate for a number of reasons. *Id.* at 1125–27. The court explained that although Rule 23 did

not apply, the standards for determining whether a Rule 23 class action was appropriate provided support for maintaining a class action. *Id.* at 1126–27. Specifically, the court found that the class was so numerous that joinder of all members was impracticable, that common questions of law or fact existed, that the claims of the representative parties were typical for the class, and that the representative parties would fairly and adequately protect the interests of the class. *Id.*; *see* FED. R. CIV. P. 23.

Here, the Veterans Court's jurisdiction extends to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2). We see no principled reason why the Veterans Court cannot rely on the All Writs Act to aggregate claims in aid of that jurisdiction.

### 2. Other Statutory Authority

In addition to the All Writs Act, other statutory authority provides the Veterans Court the authority to aggregate claims for class actions. Congress created the Veterans Court as part of the Veterans Judicial Review Act ("VJRA"). Pub. L. 100-687, Div. A, Title III, § 301(a), Nov. 18, 1988, 102 Stat. 4113, §§ 4052, 4061, and 4066. Before the VJRA, "a veteran whose claim was rejected by the VA was generally unable to obtain further review." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 432 (2011) (citing 38 U.S.C. § 211(a) (1988)). Congress enacted the VJRA to vest the newly created Veterans Court with authority to review Board decisions adverse to veterans. *Id.* There is no indication that Congress intended such review authority to not include class actions.

Before the VJRA, veterans seeking to enforce veterans benefit statutes were able to file class actions in some circumstances. For example, in *Johnson v. Robison*, 415 U.S. 361 (1974), the Supreme Court exerted its authority to review a class action in which conscientious objectors

who performed mandatory alternative civil service challenged the veterans benefits statutory provisions excluding them as beneficiaries. *See also Wayne State Univ. v. Cleland*, 590 F.2d 627, 628 n.1 (6th Cir. 1978) (reviewing a class action suit brought on behalf of all veterans enrolled in college education program); *Nehmer v. U.S. Veterans' Admin.*, 118 F.R.D. 113 (N.D. Cal. 1987) (granting motion for class certification for class of veterans exposed to certain chemicals); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34 (D.P.R. 1993) (putative class action including veterans with benefits related to mental disorders).

Under 38 U.S.C. § 7264(a), "[t]he proceedings of the [Veterans Court] shall be conducted in accordance with such rules of practice and procedure as the Court prescribes." This express grant authorizes the Veterans Court to create the procedures it needs to exercise its jurisdiction.

Other tribunals have relied on statutes with similar language as 38 U.S.C. § 7264 to aggregate claims and create class action procedures, including the Equal Employment Opportunity Commission ("EEOC"). *See* Amicus Br. of 15 Admin. Law, Civil Procedure, and Fed. Courts Professors at 10–11 (noting that the EEOC was granted authority to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities" pursuant to 42 U.S.C. § 2000e-16(b)). Under this authority, the EEOC adopted a class action resolution procedure. 29 C.F.R. § 1614.204; *see, e.g.*, 57 Fed. Reg. 12,634 (Apr. 10, 1992); *Wade v. Donahoe*, No. CIV.A. 11-3795, 2012 WL 3844380, at *13 (E.D. Pa. Sept. 4, 2012) ("Pursuant to [its 42 U.S.C. § 2000e-16(b)] authority, the EEOC has promulgated regulations for class actions.").

On the basis of the express statutory authority of the Veterans Court to prescribe "rules of practice and proce-

dure," the Veterans Court may prescribe procedures for class actions or other methods of aggregation.

### 3. Absence of Statutory Restriction

The Veterans Court relies on *Harrison v. Derwinski*, 1 Vet. App. 438 (1991) (en banc), to conclude that it lacks authority to entertain class actions. J.A. 3. The *Harrison* court relied on three statutory provisions to conclude it lacked class action authority. 1 Vet. App. at 438. It first noted that 38 U.S.C. § 7252 "limits the jurisdiction of this Court to the review of [Board] decisions." *Id.* Next, 38 U.S.C. § 7261(c) states that "[i]n no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court."[3] 38 U.S.C. § 7261(c). Finally, under 38 U.S.C. § 7266, "each person adversely affected by such a [Board] decision must file a notice of appeal." 1 Vet. App. at 438. Thus the *Harrison* decision reflects a concern that the Veterans Court would exceed its jurisdiction if, for example, it certified a class that included veterans that had not yet received a Board decision or had not yet filed a notice appealing a Board decision. The Veterans Court adopted this reasoning and further recognized that the Veterans Court has "previously declined to permit class actions because to do so would be unmanageable and unnecessary." J.A. 3.

We disagree that the Veterans Court's authority is so limited. Congress expressly gave the Veterans Court the authority to "compel action of the Secretary unlawfully

---

[3] The provision codified at 38 U.S.C. § 7261 was formerly codified at 38 U.S.C. § 4061. This provision remains unchanged since the court in *Harrison* cited it, except that in place of "Administrator," the provision now states "Secretary." 38 U.S.C. § 4061(c) (1988).

withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2). While there was legislative history that the focus should be on individual claimants, *see Am. Legion v. Nicholson*, 21 Vet. App. 1, 4–5 (2007), we find no persuasive indication that Congress intended to *remove* class action protection for veterans when it enacted the VJRA.[4] Rather, Congress gave the Veterans Court express authority to prescribe rules of practice and procedure for its proceedings.

Class actions can help the Veterans Court exercise that authority by promoting efficiency, consistency, and fairness, and improving access to legal and expert assistance by parties with limited resources. In *Young v. Shinseki*, 25 Vet. App. 201, 215 (2012), Judges Lance and Hagel explained that the VA's delay in adjudicating appeals evades review because the VA usually acts promptly to resolve mandamus petitions. 25 Vet. App. at 215; *see* note 3, *supra*. They stated that when the Veterans Court orders the VA to respond to a petition "set[ting] forth a well-pleaded complaint that the processing of a claim has been improperly delayed," the "great majority of the time" the VA "responds by correcting the problem within the short time allotted for a response, and the petition is dismissed as moot because the relief sought has been obtained." *Id.* Case law is replete with such

---

[4] A Congressional Budget Office cost estimate released shortly before the VJRA was enacted suggests that Congress intended that the Veterans Court would have the authority to maintain class actions. H.R. Rep. No. 100-963, pt. 1, at 41–42 (1988) (discussing potential litigation challenges to VA regulations, stating, "Again according to SSA, most challenges to regulations are class actions, involving large groups of beneficiaries or potential beneficiaries.").

examples.[5] Thus a claim aggregation procedure may help the Veterans Court achieve the goal of reviewing the VA's delay in adjudicating appeals.

Class actions may help the Veterans Court consistently adjudicate cases by increasing its prospects for precedential opinions. The Veterans Court issues only a small number of precedential opinions each year. *See* Amicus Brief of Former General Counsels of the VA at 7.[6] Permitting class actions would help prevent the VA from mooting claims scheduled for precedential review. *See* Amicus Brief of American Legion at 18–25 (providing two examples of instances where the VA offered full benefits to a veteran whose case was scheduled for precedential

---

[5]    *See, e.g.*, *Seller v. McDonald*, No. 16-2768, 2016 WL 5828055, at \*2 (Vet. App. Sept. 30, 2016) (withdrawing a petition for a writ of mandamus compelling the VA to adjudicate an appeal because the VA adjudicated the appeal at an unspecified time within a month and a half of the petition's filing); *Dotson v. McDonald*, No. 16-2813, 2016 WL 5335437, at \*1 (Vet. App. Sept. 23, 2016) (dismissing as moot a petition for a writ of mandamus compelling the VA to adjudicate an appeal because the VA adjudicated the appeal seven days after the petition was filed); *Dalpiaz v. McDonald*, No. 16-2602, 2016 WL 4702423, at \*1 (Vet. App. Sept. 8, 2016) (dismissing as moot a petition for a writ of mandamus compelling the VA to adjudicate an appeal because the VA adjudicated the appeal at an unspecified time within about a month of the petition's filing).

[6]    In 2014, the Veterans Court decided 1,615 appeals in single-judge non-precedential decisions, and only 35 appeals were decided by a precedential multi-judge panel or the full court.

review, while denying other veterans benefits on the same grounds).

In addition, a class action rule would permit the Veterans Court "to serve as lawgiver and error corrector simultaneously, while also reducing the delays associated with individual appeals." Michael P. Allen, *Significant Developments in Veterans Law (2004-2006) and What They Reveal About the U.S. Court of Appeals for Veterans Claims and the U.S. Court of Appeals for the Federal Circuit*, 40 U. Mich. J.L. Reform 483, 521 n.231 (2007). Similarly, class action suits could be used to compel correction of systemic error and to ensure that like veterans are treated alike. Lawrence B. Hagel & Michael P. Horan, *Five Years Under the Veterans' Judicial Review Act: The VA Is Brought Kicking and Screaming into the World of Meaningful Due Process*, 46 Me. L. Rev. 43, 65 (1994).

We see no reason why the Veterans Court cannot use class actions to promote efficiency, consistency, and fairness in its decisions. The Veterans Court is no different in this respect from, for example, the EEOC or bankruptcy courts that have adopted class action mechanisms to promote similar concerns.

Accordingly, we determine that the Veterans Court has authority to certify a class for class action or similar aggregate resolution procedure.[7] We decline to address

---

[7] In a non-precedential opinion, this court had previously agreed with the Veterans Court that it lacked the authority to establish a class action procedure. *Spain v. Principi*, 18 F. App'x 784, 786 (Fed. Cir. 2001) ("We agree that the Veterans Court did not have the authority to . . . establish class action procedures . . . ."). More recently, this court stated, in another non-precedential opinion, that the Veterans Court's position on this issue was "at a

whether certification of a class would be appropriate here, or the nature of procedures that the Veterans Court may establish for such actions.

## CONCLUSION

We hold that the Veterans Court has the authority to establish a class action mechanism or other method of aggregating claims. We reverse the Veterans Court's contrary decision and remand for the Veterans Court to determine whether a class action or other method of aggregation would be appropriate here.

### **REVERSED AND REMANDED**

## COSTS

Costs to Mr. Monk.

---

minimum, not clearly incorrect." *Adeyi v. McDonald*, 606 F. App'x 1002, 1004 (Fed. Cir. 2015). To the extent these prior non-precedential rulings diverge from our holding today, any perceived conflict is superseded by today's precedential authority.